# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

THE J. M. SMUCKER COMPANY,  )
One Strawberry Lane,  )
Orrville, OH 44667,  )   CASE NO.:
  )
Plaintiff,  )   JUDGE:
  )
v.  )
  )
CHUBBY SNACKS INC.,  )
12130 Millennium Dr., Ste. 300,  )   **COMPLAINT AND**
Los Angeles, CA 90094,  )   **DEMAND FOR JURY TRIAL**
  )
Defendant.  )
  )

## INTRODUCTION

Defendant Chubby Snacks Inc. ("Defendant" or "Chubby Snacks") is not accurate or honest with consumers about the content of its sealed, crustless peanut butter and fruit spread sandwiches. Chubby Snacks continues to perpetuate this inaccuracy and dishonesty by falsely and deceptively advertising its product as a "healthy" version of the sealed, crustless peanut butter and jelly sandwiches manufactured and made popular by Plaintiff The J.M. Smucker Company ("Plaintiff" or "Smucker") under the Uncrustables® brand. And, in so doing, Chubby Snacks without authorization uses Smucker's federally protected trademarks, resulting in unlawful tarnishment and dilution of those marks.

Contrary to Chubby Snacks' assertions otherwise, Smucker welcomes fair competition and readily accepts the challenge of competing with others, including Chubby Snacks. But Chubby Snacks, regardless of its size, still must engage consumers truthfully, compete fairly, and respect competitors' trademarks.

As such, Smucker for its Complaint against Chubby Snacks alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action against Defendant for false advertising and commercial disparagement (Count I), federal and state trademark dilution (Counts II and III), deceptive trade practices under Ohio law (Count IV), and violation of the Ohio Food Disparagement Statute (Count V).

2.      Plaintiff manufactures, markets, and sells Uncrustables sandwiches, its signature line of sealed, crustless sandwiches, which includes varieties filled with combinations of peanut butter, jelly, jam, fruit spreads, honey, and chocolate-flavored hazelnut spread. After decades of use, Smucker has built up significant goodwill with consumers and retailers surrounding the Uncrustables brand and mark, and protecting the reputation and commercial value of this asset is of the utmost importance to Smucker. In addition to its common law rights, Smucker owns at least nine federal trademark registrations associated with the Uncrustables brand.

3.      Defendant manufactures, markets, and sells its own version of sealed, crustless peanut butter and fruit spread sandwiches under the brand name Chubby Snacks (the "Chubby Products"). To expand its market share, Defendant makes unsupported and untrue statements about salient characteristics of the Chubby Products on its packaging and in advertising. Defendant's false and misleading advertising positions the Chubby Snacks brand as a purportedly healthier alternative to Uncrustables sandwiches. But the Chubby Products are not, in fact, a healthier version, as they violate the Food and Drug Administration ("FDA")'s regulatory definition of "healthier."  Defendant also makes false and misleading High Protein, High Fiber, and No Added Sugar claims that misrepresent the healthfulness of the Chubby Products.

4.      At the same time, Defendant has waged a relentless assault on the fame and goodwill associated with the trademarks applicable to the Uncrustables brand. Through years of

2

advertising designed to tarnish the name and reputation of its direct competitor, Smucker, Defendant has targeted the Uncrustables brand with false descriptions and degrading depictions of Uncrustables sandwiches, both standalone and in comparison to the Chubby Products.

5.     Defendant seeks to capitalize on the success and fame of the UNCRUSTABLES word mark (Reg. No. 2,473,056) (the "UNCRUSTABLES Mark") by using it as a shortcut to describe the Chubby Products, but Defendant crosses the line by repeatedly and improperly using variations (and intentional misspellings) of the UNCRUSTABLES Mark, as well as Plaintiff's trade dress and product images in a prominent manner in its advertising without attribution.

6.     Smucker adheres strictly to all regulations and guidelines in the manufacturing, packaging, labeling, advertising, and selling of Uncrustables sandwiches. Smucker goes to great lengths to ensure the accuracy of representations it makes to consumers about Uncrustables sandwiches. For that reason, Smucker brings this action not to stifle competition, but to ensure Defendant is competing fairly and engaging consumers truthfully.

7.     As a direct result of Defendant's false and misleading claims in its advertising and Defendant's continued defamation, Smucker has suffered and continues to suffer substantial and irreparable harm. Smucker thus seeks damages and an injunction to stop Defendant from further false advertising, commercial disparagement, trademark dilution, violation of the Ohio food disparagement statute, and other deceptive practices that it employs to promote the Chubby Products.

## THE PARTIES

8.     At all relevant times, Plaintiff is and was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at One Strawberry Lane, Orrville, Ohio 44667.

9.     On information and belief, Defendant Chubby Snacks Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. On information and belief, Defendant is the owner of the Chubby Snacks brand of sealed, crustless sandwiches.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, and because the state law claims for violation of the Ohio Deceptive Trade Practices Act are joined with substantial and related claims under the federal Lanham Act. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11.     Defendant is subject to personal jurisdiction in this District. On information and belief, Defendant has purposefully availed itself of the privilege of conducting activities in Ohio by selling to Ohio consumers directly through its website, as well as intentionally distributing the Chubby Products to retailers in Ohio for sale in Ohio. Defendant thus derives a financial benefit from the commercial activities it conducts in Ohio. Additionally, Defendant's misleading advertising is attempting to divert sales from products bearing the UNCRUSTABLES Mark in Ohio.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims for relief stated in this Complaint occurred in this District, and the intellectual property that is the subject of this action is located and maintained in

this District. Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL CLAIMS

### Plaintiff Smucker and the Uncrustables Brand

13.     Smucker is a leading American manufacturer, marketer, and distributor of retail consumer foods. For more than 127 years, Smucker has been a family-led business headquartered in Orrville, Ohio. The founder of Smucker, Jerome Monroe Smucker, sold his products from the back of a horse-drawn wagon with each jar of product bearing his hand-signed seal as his personal guarantee of quality. To ensure that its founder's personal commitment to its customers and consumers is maintained, Smucker operates from its core "Basic Beliefs," to *Be Kind*, *Be Bold*, *Do the Right Thing*, *Play to Win*, and *Thrive Together*.

14.     Smucker's priority is maintaining the same strong, ethical values upon which it was founded. Smucker maintains the highest standards of business ethics with its consumers, customers, suppliers, employees, and shareholders, and within the communities in which it operates. The Ethisphere Institute recently recognized Smucker for its commitment to business integrity by naming Smucker one of the 2024 World's Most Ethical Companies.

15.     Consistent with Smucker's beliefs and its commitment to providing consumers with high-quality goods, in 1998, Smucker began manufacturing and selling sandwiches filled with peanut butter and jelly, or jam, using trade dress that consists of a round, sealed, crustless sandwich. In 2000, Smucker began selling the same sandwich products under the UNCRUSTABLES Mark. In 2001, Smucker's Uncrustables sandwiches were named one of the Top 10 New Food Products by *Prepared Foods* magazine. The brand has since grown from approximately $10 million in annual sales to over $650 million today. Uncrustables sandwiches

are known as a quick and delicious lunch or snack that can be enjoyed anywhere. Uncrustables sandwiches are available in every state, at most grocery stores, in many schools, and through online retailers. The brand remains one of the fastest-growing products in Smucker's portfolio.

16.     Smucker manufactures all Uncrustables sandwiches in the United States at two dedicated manufacturing facilities in Kentucky and Colorado. A third dedicated manufacturing facility is nearing the end of construction in Alabama and bringing an estimated 750 jobs to the local area.

17.     In addition to its common law rights, Smucker owns numerous federal trademarks registrations related to the Uncrustables brand, as shown in the chart below (collectively the "Smucker Trademarks").

| Mark | Status | Good |
|---|---|---|
|  | Reg. No. 2,623,577<br>Reg. Date: Sep. 24, 2002 | Sandwiches (IC 30) |
|  | Reg. No. 2,883,529<br>Reg. Date: Sep. 14, 2004 | Sandwiches (IC 30) |
|  | Reg. No. 5,941,408<br>Reg. Date: Dec. 24, 2019 | Sandwiches (IC 30) |
| UNCRUSTABLES | Reg. No. 2,473,056<br>Reg. Date: Jul. 31, 2001 | Sandwiches (IC 30) |

| Mark | Status | Good |
|------|--------|------|
| UNCRUSTABLES | Reg. No. 6,824,295<br>Reg. Date: Aug. 23, 2022 | Cheese-based and meat-based snack foods (IC 29)<br><br>Frozen foods; wheat-based snack foods (IC 30) |
| SMUCKER'S | Reg. No. 5,221,873<br>Reg. Date: June 13, 2017 | Food, namely, Sandwiches (IC 30) |
|  | Reg No. 2,763,784<br>Reg. Date: Sep. 16, 2003 | Packaged lunch combinations consisting primarily of fruit spreads, jams, jellies, preserves, peanut butter, and cracker combinations (IC 30) |
| Uncrustables | Reg. No. 7,443,335<br>Reg. Date: July 9, 2024 | Cheese-based snack foods; Meat-based snack foods (IC 29)<br><br>Sandwiches; Frozen foods, namely, grain and bread based appetizers, hors d'oeuvres, and canapés; Wheat-based snack foods (IC 30) |
| Uncrustables | Reg. No. 7,443,334<br>Reg. Date: July 9, 2024 | Cheese-based snack foods; Meat-based snack foods (IC 29)<br><br>Sandwiches; Frozen foods, namely, grain and bread based appetizers, hors d'oeuvres, and canapés; Wheat-based snack foods (IC 30) |

True and correct copies of the certificates of registrations of the Smucker Trademarks are attached as Exhibit 1 and incorporated hereto.

18. The registration of each of the Smucker Trademarks is valid and enforceable.

19. Smucker has established to the satisfaction of the USPTO that these marks are used in a trademark manner and are inherently distinctive or have acquired distinctiveness as trademarks. Five of the Smucker Trademarks have achieved statutory incontestability under section 15 of the Lanham Act, 15 U.S.C. § 1065.[1]

20. Smucker has used the UNCRUSTABLES Mark on the packaging of every Uncrustables sandwich and product and in every advertising campaign. Smucker has company-wide guidelines in place standardizing the proper use of the UNCRUSTABLES Mark as an adjective rather than a noun (*e.g.* "Uncrustables sandwich" versus "an Uncrustable"), to prevent a blurring or loss of distinctiveness of the trademark.

21. Smucker currently sells the following varieties of Uncrustables sandwiches in packaging prominently featuring the Smucker Trademarks:

       a. Peanut Butter & Grape Jelly Sandwich,

       b. Peanut Butter & Strawberry Jam Sandwich,

       c. Peanut Butter & Honey Spread Sandwich,

       d. Chocolate Flavored Hazelnut Spread Sandwich,

       e. Reduced Sugar Peanut Butter & Grape Spread Sandwich on Wheat, and

       f. Reduced Sugar Peanut Butter & Strawberry Spread Sandwich on Wheat.

---

[1] See Reg. Nos. 2,623,577; 2,473,056; 2,763,784; 2,883,529; and 5,221,873.





22.     Smucker has expended millions of dollars advertising and promoting Uncrustables sandwiches using the Smucker Trademarks.

23.     A Google search for "Uncrustables" garners over two million results.

24.     The success of Uncrustables sandwiches have been detailed and chronicled by mainstream media including financial publications.[2]

---

[2] *See, e.g*, Eleanor Hawkins, "Smucker's CEO says marketing will make Uncrustables a $1 billion brand," AXIOS (Feb. 22, 2024), https://www.axios.com/2024/02/22/smuckers-uncrustables-1-billion-brand-marketing; Jennifer Williams-Alvarez, "What's in Your Bag or Briefcase? Smucker CFO Wants It to Include Uncrustables Sandwiches," WALL STREET JOURNAL (June 19, 2023, 7:00 a.m. ET), https://www.wsj.com/articles/whats-in-your-bag-or-briefcase-smucker-cfo-wants-it-to-include-uncrustables-sandwiches-fb943686; Keith Nunes, "Uncrustables hitting on all cylinders for Smucker," FOOD BUSINESS NEWS (Feb. 28, 2024), https://www.foodbusinessnews.net/articles/25642-uncrustables-hitting-on-all-cylinders-for-smucker; Clint Rainey, "The untold story of how Uncrustables became a nearly $1 billion brand. Yes, Uncrustables," FAST COMPANY (Apr. 10, 2024), https://www.fastcompany.com/91077676/uncrustables-billion-sales-inside-j-m-smucker-peanut-butter-jelly-travis-jason-kelce; and Jennifer Williams-Alvarez, "The Grown-Ups Who Can't Quit Uncrustables," WALL STREET JOURNAL (Sep. 1, 2023, 9:00 a.m. ET), https://www.wsj.com/arts-culture/food-cooking/uncrustables-smucker-pbj-snacks-9a95ff19.

## Smucker's CEO says marketing will make Uncrustables a $1 billion brand

Feb 22, 2024 · Business


Eleanor Hawkins



Screenshot: Smucker's/YouTube

J.M. Smucker — the food and beverage manufacturer behind brands like Smucker's jelly, Jif peanut butter, Folgers coffee and Twinkies — is leaning on marketing and communications to unite its employee base and build its next $1 billion brand.

**Why it matters:** Since taking the helm in 2016, CEO Mark Smucker told Axios he has prioritized communication and views it as a lever for maintaining competitive advantage.

**State of play:** To connect with external audiences, Smucker has ramped up its brand marketing efforts.

---

CFO JOURNAL

## What's in Your Bag or Briefcase? Smucker CFO Wants It to Include Uncrustables Sandwiches

The Uncrustables brand is boosting sales for J.M. Smucker, which is in part because of broad appeal, according to CFO Tucker Marshall

By *Jennifer Williams-Alvarez* [Follow]

June 19, 2023 7:00 am ET

Share     AA Resize     Listen (2 min)



Net sales for J.M. Smucker's Uncrustables brand were up 43%, to $185 million, for the quarter ended April 30 compared with a year earlier.  PHOTO: DANIEL ACKER/BLOOMBERG NEWS

J.M. Smucker wants its frozen, hand-held sandwiches, known as Uncrustables, to reach beyond the lunchbox, to briefcases and handbags.

---

Food Business News

SIGN IN     CREATE ACCOUNT

Companies ⌄   R&D ⌄   Market Insights ⌄   Advertising ⌄   Subscribe ⌄   Digital Editions

## Uncrustables hitting on all cylinders for Smucker



Photo: ©COLLEENMICHAELS – STOCK.ADOBE.COM

02.28.2024    By Keith Nunes

ORRVILLE, OHIO — The opening and later expansion of the J.M. Smucker Co.'s Uncrustables plant in Longmont, Colo., accelerated the brand's growth in 2022 and 2023. The momentum continued into the third quarter of fiscal 2024 following the introduction of Uncrustables in Canada and in the away-from-home category.

---

FAST COMPANY

04-10-2024 | DESIGN

## The untold story of how Uncrustables became a nearly $1 billion brand. Yes, Uncrustables

Because peanut butter and jelly is a flat circle.



[Source Images: J.M. Smucker Co.]

BY CLINT RAINEY   LONG READ

Last October, on their popular podcast *New Heights*, the Kansas City Chiefs tight end Travis Kelce interrupted his Philadelphia Eagles center brother, Jason, to say that there is a certain snack he eats "probably more than I eat anything else in the world." It was Uncrustables, he admitted, the frozen peanut-butter-and-jelly discs made by the J.M. Smucker Co. that, in America over the past year, have become almost as omnipresent as Travis's girlfriend, Taylor Swift.



25.     Uncrustables sandwiches have a mass following among consumers of all ages and backgrounds, including famous fans such as celebrities and professional athletes.[3]

**Defendant's False and Misleading Claims about Its Product**

26.     Defendant currently sells four varieties of the Chubby Products, which include peanut or almond butter, paired with a grape or strawberry fruit spread.

27.     Defendant seeks to increase its sales, at Smucker's expense, by making unsupported and untrue statements in its packaging and advertising about the Chubby Products and the characteristics of Uncrustables sandwiches.[4]

---

[3] *See* Meghan L. Hall, "The Ravens eating an unhinged amount of Uncrustables is somehow the least surprising thing about their season," USA TODAY (Jan. 18, 2024, 12:08 p.m. ET), https://ftw.usatoday.com/2024/01/baltimore-ravens-uncrustables-peanut-butter-jelly-snacks-2023-season; Charles Curtis, "Charles Barkley, a man of the people, loves Uncrustables," USA TODAY (Mar. 20, 2023, 9:53 a.m. ET), https://ftw.usatoday.com/2023/03/charles-barkley-uncrustables-march-madness-cbs; Greg Gottfried, "Sam Burns' secret weapon at the WGC-Dell Match Play was … Uncrustables?," GOLF DIGEST (Mar. 27, 2023), https://www.golfdigest.com/story/sam-burns-secret-weapon-match-play-charles-barkley-uncrustables; and Victoria Giardina, "'It's About Damn Time' you shop Lizzo's Instacart grocery list," NY POST (Aug. 25, 2022), https://nypost.com/2022/08/25/lizzo-teams-up-with-instacart-for-the-world-is-your-cart/.

[4] Plaintiff does not plead, and herby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws.

28.     *Front-label protein claim*. On the front packaging of each Chubby Product variety, Defendant mislabels the protein content with a nutrient content claim that does not comply with FDA regulations. First, if a protein claim is made on the package, FDA regulations require the percent daily value for protein to also be included in the Nutrition Facts Panel (NFP). 21 C.F.R. 101.9(c)(7)(i); 21 C.F.R. 101.13(c). Defendant states on every front label that the Chubby Products have 9 grams of protein but does not provide the percent daily value for protein in the NFP. The percent daily value, unlike the gram amount declared for protein, must be adjusted to account for protein *quality*. 21 C.F.R. 101.9(c)(7)(i). As the FDA has explained, "Information on protein quantity alone can be misleading on foods that are of low protein quality." 58 Fed. Reg. 2079, 2101-2 (Jan. 6, 1993). Without the required disclosure of the percent daily value for protein in the NFP, the protein claim is literally and impliedly false and misleading.



12

29.     Defendant also fails to include necessary context on the contribution of Chubby Products to the daily diet, adjusted for protein quality. Upon information and belief, the sources of protein in the Chubby Products are plant-based proteins, including peanuts, jelly, and wheat. Peanuts, jelly, and wheat are incomplete sources of protein because they do not contain all 9 essential amino acids, are not fully usable by the body, and accordingly are not allocated full "credit" towards the daily value for protein. [5]  Courts have found that the omission of the percent daily value in the NFP when a front panel protein claim is made could plausibly mislead consumers by overstating the usable protein content of the product. *See, e.g., Guerra v. KIND, LLC*, 2023 WL 3436093, at *5–8 (N.D. Cal. May 11, 2023), and *Pino v. Birch Benders, LLC*, 2022 WL 4913320, at *4–5 (N.D. Cal. Oct. 3, 2022).

30.     *Website and Social Media Claims.* Defendant's website, including the top of Defendant's home page[6] and the pages for each Chubby Product variety,[7] claim that the Chubby Products are "high fiber," "high protein," and have "no added sugar."

---

[5] Sapna Langyan, et al., *Sustaining Protein Nutrition Through Plant-Based Foods*, 8 FRONTIERS NUTR. (Jan. 18, 2022),  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8804093/pdf/fnut-08-772573.pdf ("most plant proteins are deficient in essential amino acids and are, therefore, nutritionally incomplete"); FAO/WHO (1991) *Protein Quality Evaluation: Report of the Joint FAO/WHO Expert Consultation*, FAO Food and Nutrition Paper 51.

[6] Chubby Snacks, https://www.chubbysnacks.co/ (last visited Aug. 6, 2024).

[7] *See Chubby Snacks Peanut Butter Pack*, https://www.chubbysnacks.co/products/peanut-butter-pack, and *Chubby Snacks Almond Butter Pack*, https://www.chubbysnacks.co/products/almond-butter-pack (last visited Aug. 6, 2024).



31.     Defendant makes the same claims throughout its social media marketing. For example, on September 3, 2022, Defendant posted on its TikTok page a video stating the Chubby Products are "high protein" with "no added sugar" and "high fiber."[8]  On November 2, 2023, Defendant posted a video commercial to its Instagram page in which an actress portraying a call center operator states the Chubby Products have "no added sugars" and "high protein macros."[9]



---

[8] Chubby Snacks, TikTok (Sep. 3, 2022), https://www.tiktok.com/@chubby_snacks/video/7139153415925452075 (left).
[9] Chubby Snacks, Instagram (Nov. 2, 2023), https://www.instagram.com/p/CzKJsOzSdEK/ (right).

32.     On February 18, 2023, Defendant posted on its TikTok page a video stating, "Maturing is realizing you can eat snacks that are healthy and delicious," with the accompany hashtag stating "high protein snack."[10]



33.     "*High Protein*."  Defendant claims, in online advertising and on its website, that the Chubby Products are high in protein. *See supra* ¶¶ 28–32.[11]  They are not. FDA regulations require that a product labeled with a "high" nutrient claim must contain at least 20 percent daily reference value of that nutrient per reference amount customarily consumed (RACC). 21 C.F.R.

---

[10] Chubby Snacks, TikTok (Feb. 18, 2023),
     https://www.tiktok.com/@chubby_snacks/video/7223406917132176686?lang=en.

[11] *See also Frequently Asked Questions*, Chubby Snacks, https://www.chubbysnacks.co/pages/frequently-asked-questions (last accessed August 22, 2024) ("[W]e provide a low-sugar, high-protein, high-fiber snack for both kids and adults.").

§ 101.54(b)(1).  The RACC for sandwiches is 140 grams (g).  21 C.F.R. § 101.12(b).  Upon information and belief, the Chubby Products do not contain 20% DV protein per RACC. The Chubby Products contain plant-based sources of protein, including peanuts, jelly, and wheat, which are incomplete sources of protein and not fully usable by the body.[12]  When calculating the percent daily value for protein from such sources, it must be adjusted to reflect their lower digestibility. 21 C.F.R. § 101.9(c)(7)(i). Based on the required "correction" factors for each of the protein sources, and based upon Smucker's own experience with these same protein sources in its own products, the Chubby Products contain less than 20 percent of the daily value for protein per 140 g RACC. Further, on a per 75 g serving (i.e., "per sandwich") basis, the Chubby Products contain even less protein. The term "High Protein" communicates to consumers that they will receive a meaningful portion of the daily value of protein in each serving of the Chubby Products, but this is untrue. Thus, the claim is literally and impliedly false and misleading.

34.    "*High Fiber*."  Defendant claims, in online advertising and on its website, that the Chubby Products are high in fiber. *See supra* ¶¶ 31–32.[13]  However, neither Defendant's peanut butter and strawberry nor peanut butter and grape sandwiches are "high fiber" on a per serving basis. The Chubby Products contain 4g or 14% daily value of fiber per serving, which does not meet the "high" threshold of 20% daily value. In instances where a food meets the "high fiber" criteria on a per RACC basis,[14] but not on a per serving size basis, as here, the FDA regulations require the disclosure of the RACC "immediately adjacent" to the claim in order to clarify that the product is an excellent source of fiber on a per RACC, but not per serving, basis (for example,

---

[12] *See supra* ¶ 29 & n. 5.

[13] *See id.*

[14] The RACC for sandwiches is 140 g. 21 C.F.R. § 101.12(b). On a per 140 g RACC basis, therefore, Defendant's sandwiches contain 7.5 g or 26% daily value of fiber.

"High Fiber, 26% of the DV per 140g"). 21 C.F.R. § 101.13(p). This information is material because each serving of the Chubby Products does not contain an excellent source of fiber and, absent a disclosure, consumers would expect this to be the case based on the claim. Further, fiber claims in foods that are not low fat, as defined in 21 C.F.R. § 101.62(b)(2), must be accompanied by a disclosure – appearing in immediate proximity to the claim – of the level of total fat per labeled serving. *Id.* at § 101.54(d). The Chubby Products, a nut butter sandwich, are not low fat.[15] Upon information and belief, Defendant has not included the mandatory disclosure of total fat per serving near any of its High Fiber claims. Because the current fiber claim (i) does not comply with applicable requirements, (ii) suggests that each serving of the Chubby Products will provide a meaningful contribution to daily fiber intake, when it does not, and (iii) does not include the important context about the fat content, the claim is literally and impliedly false and misleading.

35.    "*No Added Sugar*."  Defendant claims, in online advertising and on its website, that the Chubby Products contain no added sugar. *See supra* ¶¶ 31–32.[16]  They contain added sugar. FDA regulations state the term "no added sugar" may only be used if "[n]o amount of sugars, as defined in § 101.9(c)(6)(ii) or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging."  21 C.F.R. § 101.60(c)(2)(i). Added sugars are further defined in 21 C.F.R. § 101.9(c)(6)(iii). Ingredients from the Chubby Products varieties that fall within the definition of added sugars from 21 C.F.R. § 101.60(c)(2)(ii)–(iii) include molasses, grape or strawberry juice concentrate, and fermented

---

[15] FDA regulations at 21 C.F.R. § 101.62(b)(2) define "low fat" as a food customarily consumed in amounts greater than 2 tablespoons and containing 3 grams or less of fat per RACC. Each Product serving (one sandwich) contains 12 g fat and on a per RACC basis the Chubby Products contain 22 g fat.

[16] *See also Frequently Asked Questions*, Chubby Snacks, https://www.chubbysnacks.co/pages/frequently-asked-questions (last accessed Aug. 21, 2024) ("[W]e provide a low-sugar, high-protein, high-fiber snack for both kids and adults.").

sugarcane. Defendant's representations that no sugars are added are thus literally and impliedly false and misleading.

---

**Peanut Butter & Grape Jam**

**Peanut Butter:**
peanuts, cocoa butter, sea salt.

**Grape Jam:**
Grape Puree Concentrate, Water, Date Powder, Grape Juice Concentrate, Grape Powder Blend (Grape Juice Powder, Lime Juice Powder, Tartaric, Malic, Monk Fruit Extract, Fermented Sugarcane, Ascorbic, Citric), Thickening Blend (Agave Inulin, Agar Powder, Lemon Peel), Hydrated Chia Seeds (water, chia seeds), Grape Flavor, Mushroom Extract.

**Bread:**
water, wheat flour, whole wheat flour, white bread flour, crushed whole wheat, molasses, salt, yeast, all-natural dough conditioner (wheat flour, malted barley flour, ascorbic acid, enzymes), wheat gluten.

---

**Peanut Butter & Strawberry Jam**

**Peanut Butter:**
peanuts, cocoa butter, sea salt.

**Strawberry Jam:**
Strawberry Puree Concentrate, Water, Strawberry juice concentrate, Date Powder, Strawberry Powder Blend (Strawberry Juice Powder, Lime Juice Powder, Citric, Ascorbic, Hibiscus flower, Monk Fruit Extract, Fermented Sugarcane, Malic, Tartaric), Thickening Blend (Agave Inulin, Agar Powder, Lemon Peel), Hydrated Chia Seeds (water, chia seeds), Strawberry Flavor, Mushroom extract.

**Bread:**
water, wheat flour, whole wheat flour, white bread flour, crushed whole wheat, molasses, salt, yeast, all-natural dough conditioner (wheat flour, malted barley flour, ascorbic acid, enzymes), wheat gluten.

---

36.     "*Grape Jam*" *and* "*Strawberry Jam*."   Defendant claims the Chubby Products contain strawberry or grape "jam."  Jams and fruit preserves are subject to a federal standard of identity specified in 21 C.F.R. § 150.160. To ensure consumers receive the product they reasonably

expect, only "safe and suitable" enumerated ingredients, in addition to fruit and sugar, may be added to a jam.[17]  Defendant's "grape jam" ingredients list includes hydrated chia seeds, agave inulin, monk fruit extract, grape flavor, and fermented sugarcane. The "strawberry jam" ingredients list includes date powder, hydrated chia seeds, agave inulin, strawberry flavor, hibiscus, monk fruit extract, and fermented sugarcane. These ingredients all fall outside the list of permissible jam additives outlined in 21 C.F.R. § 150.160 (c). A product may not use a standardized term such as "jam" without qualification when the standard of identity is not met. 21 U.S.C. §§ 343(b), (g). The federal standards of identity shape consumer expectations for "jam," and by using these terms when the ingredients do not comply with the standards of identity, Defendant overstates the quality of the ingredients and Chubby Products. Thus, claims that the Chubby Products contain grape or strawberry jam are literally and impliedly false and misleading.

37.     Defendant's refusal to comply with standard of identity regulations is evident from online marketing where Defendant attempts to prey on consumers' fears associated with sugar. For example, in an Instagram post from November 9, 2021 that remains publicly accessible, Defendant states it fills its "jam" with 70% fruit, then "fill[s] the remaining amounts with other fruit and superfood."[18]  An Instagram post from March 8, 2024, refers to the Chubby Products as "Superfood PB&Js".[19]  Defendant further declares that jam should be "FREE[D] … FROM SUGAR."  "Free from Sugar" is a version of the express nutrient content claim "Sugar Free" under

---

[17] *See* 21 C.F.R. § 130.8(a). By regulation, the following "safe and suitable optional ingredients" may be used in a fruit preserve or jam: nutritive carbohydrate sweeteners, spice, acidifying agents, pectin, buffering agents, preservatives, and antifoaming agents not derived from animal fat. 21 C.F.R. § 150.160(c). The addition of other ingredients may change the chemistry of jam and permit the growth of bacteria and toxins.

[18] Chubby Snacks, INSTAGRAM (Nov. 9, 2021), https://www.instagram.com/p/CWEAO_dpZNC/. Defendant also shared the post to its Facebook page; see Chubby Snacks, FACEBOOK (Nov. 9, 2021), https://www.facebook.com/chubbysnacks/posts/pfbid02k2LW1njT4azQbsNcandSK2tQVJqnq8MtPKJ7D2AqydiWgZJnHe3TJssTpJJ531pvl.

[19] Chubby Snacks, INSTAGRAM (March 8, 2024), https://www.instagram.com/p/C4Q9UOXvSyk/?hl=en.

21 C.F.R. § 101.60(c), but the Chubby Products do not meet any of the requirements for this claim because they contain 4 g sugar per serving. Moreover, the statement that the jam is comprised of only fruit and "superfoods" is false, as ingredients like water, fermented sugar, and malic acid do not contribute to beneficial nutrient intake and are not superfoods. Thus, Defendant's representations are literally and impliedly false and misleading.



38.     In the context of any nutrient content claim, when a food contains more than 13g of fat, 4g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per RACC of that type of food, 21 C.F.R. § 101.13(h)(1) requires the packaging bear a statement "disclosing that the nutrient exceeding the specified level is present in the food as follows: 'See nutrition information for _____ content,' with the blank filled in with the identity of the nutrient exceeding

the specified level."  21 C.F.R. § 101.13(h)(1). A sandwich has a RACC of 140 grams. 21 C.F.R. § 101.12, Table 2 (Mixed Dishes Not Measurable with Cup). Based on the information declared in the Chubby Products' NFPs, the "Peanut Butter & Grape Jam" packaging is missing a required disclaimer for fat and saturated fat content, and the "Peanut Butter & Strawberry Jam" packaging is missing a required disclaimer for fat and saturated fat content. Without these required disclosures, the packaging claims are literally and impliedly false and misleading because they present only the "good" news about the Chubby Products' nutritional content without presenting other material information about nutrients of concern.

39.    *Hibiscus as Coloring*. The ingredients for the strawberry "jam" variety of the Chubby Products include hibiscus flower. Upon information and belief, this ingredient is being used as a coloring. Hibiscus imparts a pink color to foods, and it is only used as an ingredient in Defendant's strawberry "jam" variety of the Chubby Products, not in sandwiches for which the fruit spread would not be expected to have a pink or red color. As a noncertified color, its use as a color must be indicated per 21 C.F.R. § 101.22(k)(2) (e.g., "hibiscus for color"). Some consumers seek to avoid products with added colors of any source and will look to the ingredient declaration to identify any added colors. Without a disclosure for hibiscus as coloring, consumers have no way to know that this Chubby Product contains added colors, and its inclusion in the ingredient list is literally and impliedly false and misleading.

40.    "*Fresh, never frozen*."  The image below (left) is from an email marketing campaign Defendant sent in February 2024, in which Defendant claims the bread used in Chubby Products is "[f]resh, never frozen."  This is false and misleading, because Chubby Products – including the bread – are frozen and must be thawed before consuming. The claim is particularly absurd given Defendant's social media posts showing Chubby Snacks available for purchase in

the grocery store freezer aisle (*see infra* ¶¶ 47, 59), and posts from Defendant's Chief Executive Officer showing freezing as part of the manufacturing process of Chubby Snacks.[20]

 

---

20 *See* Dillon Ceglio, LINKEDIN, https://www.linkedin.com/posts/dillon-ceglio_pbandjhustler-activity-7077310061752037376-zLkQ.

41.    *Undisclosed Affiliated Reviews*. On Defendant's website home page, Defendant states, "Don't Take Our Word For It," then features the following reviews, which appear to be comments posted on Defendant's social media channels.



42.    The heading "Don't Take Our Word For It" conveys the unmistakable impression and necessary implication that these are reviews from customers who are not affiliated with Defendant. However, upon information and belief, several of these reviews come from people closely affiliated with Defendant. Specifically, upon information and belief, @Basilandbooze is an employee of Defendant; @Tommy_ho11and is a friend of Defendant's founder; and @Dperrotta is the sister of Defendant's founder. But nowhere do these reviews disclose the reviewer's relationship to a company insider. The FTC requires disclosure of material connections in conjunction with product reviews: "When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement, and that connection is not reasonably expected by the audience, such connection

must be disclosed clearly and conspicuously. Material connections can include a business, family, or personal relationship."  16 C.F.R. § 255.5(a).  Additionally, in recognition of the importance of reviews to consumer decision-making, the FTC recently formalized a rule banning, among other things, "the use of consumer reviews and testimonials written by company insiders without disclosure of their relationships to the company."[21]  By implying that these are external customer reviews, Defendant suggests to consumers that the reviews are genuine and unbiased and therefore trustworthy. Since the reviews are not external to Defendant, and the connection between the endorser and the seller is not disclosed, the implication is false and misleading.

43.     Defendant's reviews posted on its own website are also false. Defendant posts the same reviews for each Chubby Product variety, meaning the same reviews are posted on multiple SKU numbers. For example, the reviews below are just two of many reviews posted on all four Chubby Product variety purchase pages (Peanut Butter, Almond Butter, Grape Jam, and Strawberry Jam 8-Packs). This practice, known as "review hijacking," deceptively repurposes consumer reviews from one product to a substantially different product, to inflate the number of ratings and suggest more people are purchasing the item. The FTC has deemed review hijacking a deceptive trade practice. 88 Fed. Reg. 49364 at 49373–74 (July 31, 2023). Defendant implies that reviews posted to a certain product page are correlated to or reviewing the product type sold on that page. Because that cannot plausibly be the case for all four currently available Chubby Product types, these statements are literally and impliedly false and misleading.

---

[21] *See* 16 C.F.R. Part 465, *Trade Regulation Rule on the Use of Consumer Reviews and Testimonials*, FTC Federal Register Notices, at 5, 13 (Aug. 14, 2024), https://www.ftc.gov/legal-library/browse/federal-register-notices/16-cfr-part-465-trade-regulation-rule-use-consumer-reviews-testimonials-final-rule (last accessed August 21, 2024).



**Defendant's Smear Campaign Against the Uncrustables Brand**

44.     *Claims that the Chubby Products Are "Healthier" than Uncrustables Sandwiches.* Defendant repeats false claims on its website and social media – and has done so for years – that the Chubby Products are "healthier" and "better for you" than "junk-filled" Uncrustables sandwiches. These claims are false, misleading, and disparaging. *See infra* ¶¶ 74-78.

45.     Upon information and belief, one of Defendant's primary methods of advertising is operating a TikTok page under the username @chubby_snacks. The page currently has over 2,200 followers and 54,000 "likes" on its posts. On July 18, 2024, Defendant posted a video with a hashtag referencing the Uncrustables brand, referring to Chubby Products as "a healthier version of the uncrustable," and claiming that "[Smucker's] lawyers pretty much labeled me a criminal" for posting unapproved drug claims that could deceive consumers:[22]

---

[22] Chubby Snacks, TikTok (July 19, 2024),
    https://www.tiktok.com/@chubby_snacks/video/7392660994490649886?lang=en.





46.     On July 10, 2024, Defendant posted on its TikTok page a video of its product going into a toaster with a caption asking, "Ayo are those Uncrustables but better (for you)?!"[23]  The caption also includes a hashtag refencing the Uncrustables brand.



47.     On June 28, 2024, Defendant posted on its TikTok page a video of the CEO, Dillon Ceglio, stating, "Let me set the record straight. There's no denying the Uncrustable is the 'OG' [original] PB&J. But we're different and they're actually afraid of that. Here's the cease and desist to prove it. . . . We just wanted a PB & J that was nutritious and not filled with junk or sugar. So we went out and built it ourselves. We kept the same traditional taste, we just added super food ingredients to it. They, on the other hand, have all these ingredients that nobody can pronounce."[24] The caption includes the hashtag, "#uncrustables".

---

[23]     Chubby Snacks, TikTok (July 10, 2024),
    https://www.tiktok.com/@chubby_snacks/video/7390065949375794463.

[24]     Chubby Snacks, TikTok (June 28, 2024),
    https://www.tiktok.com/@chubby_snacks/video/7385671053705628958 .









48.    On March 14, 2023, Defendant posted on its TikTok page a video stating: "Just want to let everyone know that Uncrustables are the scum of the earth of a food." [25]  Defendant then describes the Chubby Products as a "healthier" and "better for you option" than Uncrustables sandwiches and calls Uncrustables sandwich consumers "losers."



49.    Also on March 14, 2023, Defendant posted a second TikTok video about Uncrustables sandwiches, stating: "When they want to join your team but you see them in the

---

25      Chubby Snacks, TikTok (Mar.14, 2023),
   https://www.tiktok.com/@chubby_snacks/video/7210467018846522670.

freezer aisle with uncrustables."[26] In the caption, Defendant's hashtags falsely claim and misleadingly suggest the Chubby Products are high protein and healthy.





---

26      Chubby Snacks, TɪᴋTᴏᴋ (Mar.14, 2023),
     https://www.tiktok.com/@chubby_snacks/video/7210571125363887406.

50.     On April 4, 2023, Defendant posted on its TikTok page a video stating, "When Uncrustable kids become adults who have their own money". The caption refers to the Chubby Products as "healthy uncrustables."[27]





27      Chubby Snacks, TɪᴋTᴏᴋ (Apr. 4, 2023),
        https://www.tiktok.com/@chubby_snacks/video/7218268228089417002.

51.     On March 11, 2023, Defendant posted on its TikTok page a video describing the Chubby Products as "a better alternative to Uncrustables." Additionally, the caption's hashtags falsely claim and misleadingly suggest the Chubby Products are high protein and healthy. [28]



52.     On March 1, 2023, Defendant posted on its TikTok page a video stating, "Whenever I see someone eating an Uncrustable even though there's a healthier option."  The

---

28      Chubby Snacks, TɪᴋTᴏᴋ (Mar. 11, 2023),
    https://www.tiktok.com/@chubby_snacks/video/7231962725587537198.

caption repeats Defendant's literally and impliedly false and misleading claims that the Chubby Products have "0 sugar" and "9 grams of protein."[29]





chubby_snacks
Chubby Snacks · 2023-3-1

A 0 sugar, 9 grams of protein option exists!!!! #snack #chubbysnacks #healthysnacks #pbandj #snackplate

53.     On February 24, 2023, Defendant posted on its TikTok page a video stating, "When you FINALLY find a healthy alternative to the Uncrustable".[30]

54.     On February 22, 2023, Defendant posted on its TikTok page a video stating, "When you come out with multiple different flavors of healthier uncrustables and they're all delicious".[31]

---

[29] Chubby Snacks, TIKTOK (Mar. 1, 2023), https://www.tiktok.com/@chubby_snacks/video/7205682629457235243.

[30] Chubby Snacks, TIKTOK (Feb. 24, 2023), https://www.tiktok.com/@chubby_snacks/video/7203796725725842734.

[31] Chubby Snacks, TIKTOK (Feb. 22, 2023), https://www.tiktok.com/@chubby_snacks/video/7202979775877565739.

55.     On February 16, 2023, Defendant posted on its TikTok page a video stating, "I wish there was a healthy version of the uncrustable".[32]

56.     On January 24, 2023, Defendant posted on its TikTok page a video stating, "I can't believe you'd spend $3.75 on a pb&j,  I could buy three uncrustables at that price."[33] In the caption, Defendant states, "Let's set the record straight: chubby snacks contain real ingredients that are good for your body, while cheaper brands serve you empty calories and high sugar. Invest in yourself."  The caption's hashtags falsely claim and misleadingly suggest the Chubby Products are high protein and healthy.



57.     On January 24, 2023, Defendant posted a second TikTok video about Uncrustables sandwiches, this time stating, "When you realize that Chubby Snacks are the protein packed, high

[32] Chubby Snacks, TɪᴋTᴏᴋ (Feb. 16, 2023),
    https://www.tiktok.com/@chubby_snacks/video/7200842962656365870.
[33] Chubby Snacks, TɪᴋTᴏᴋ (Jan. 24, 2023),
    https://www.tiktok.com/@chubby_snacks/video/7200842962656365870.

fiber adult version of uncrustables so you can still enjoy your fave childhood snack without all the sugar and processed[34] grossness."[35] The caption repeats Defendant's literally and impliedly false and misleading claims that the Chubby Products are "High protein, no added sugar, high fiber healthy snacks."



---

[34] While a claim that a food is "processed" is not regulated by the FDA, Defendant admits on its website that its own so-called "jam" has undergone "processing": "We blend together different purees, juice concentrates and extracts to really bring home the grape and strawberry flavors and pair it primarily with Dates, some sprinkles of monk fruit and fermented cane sugar." *See Frequently Asked Questions*, Chubby Snacks, https://www.chubbysnacks.co/pages/frequently-asked-questions (last accessed July 2, 2024).

[35] Chubby Snacks, TIKTOK (Jan. 24, 2023), https://www.tiktok.com/@chubby_snacks/video/7192285287932955950.

58.     On January 11, 2023, Defendant posted on its TikTok page a video stating, "reasons we regret making a healthier version of uncrustables," then in the caption stating, "We regret nothing".[36]

59.     On August 31, 2022, Defendant posted on its TikTok page a video describing the Chubby Products as "an actually healthy version of an uncrustable," with the caption, "Finally, a healthy uncrustable". This is Defendant's second post "pinned" to the top of Defendant's profile, meaning it is the second video any user sees when visiting Defendant's profile. It has been viewed over 632,000 times.[37]



---

[36]     Chubby Snacks, TikTok (Jan. 11, 2023),
   https://www.tiktok.com/@chubby_snacks/photo/7187426260883180842
[37]     Chubby Snacks, TikTok (Aug. 31, 2022),
   https://www.tiktok.com/@chubby_snacks/video/7138167264909577515.

36

60.     On December 6, 2022, Defendant posted on its TikTok page a video stating, "When I eat a chubby snack instead of a junk-filled uncrustable".[38] The caption's hashtags falsely claim or misleadingly suggest the Chubby Products are high protein and healthy.



61.     On November 8, 2022, Defendant posted on its TikTok page a video stating, "When you realize a healthier version of Uncrustables exists." The caption also states "Healthy uncrustables exist."[39]

38      Chubby Snacks, TIKTOK (Dec. 6, 2022),
        https://www.tiktok.com/@chubby_snacks/video/7174101624456105258.
39      Chubby Snacks, TIKTOK (Nov. 8, 2022),
        https://www.tiktok.com/@chubby_snacks/video/7163786866267802923.

62.     On October 23, 2022, Defendant posted on its TikTok page a video stating, "a healthier alternative to the uncrustable does exist."[40]

63.     On October 12, 2022, Defendant posted on its TikTok page a video stating, "Finally finding a healthy version of an Uncrustable."[41]

64.     On June 9, 2022, Defendant posted on its TikTok page a video of its CEO, Dillon Ceglio, stating that he "used to love Uncrustables," but "the ingredients were just way too cheap and really low quality." [42]  The caption states that Ceglio "created a PB&J company to take on the #Uncrustables."



65. On October 12, 2021, Defendant posted on its TikTok page a video of a woman taking a bite of an Uncrustables sandwich, frowning or grimacing, then smashing the sandwich with her hand on the counter."[43]  The caption includes the hashtag, "#uncrustable".



66. On January 1, 2022, Defendant re-posted virtually the same video described in the previous paragraph, with the addition of the woman also giving the smashed sandwich a "thumbs down."  The hashtags in the caption repeat the false and misleading claim that the Chubby Products are "healthy" and "good for you." [44]

---

40  Chubby Snacks, Tɪᴋᴛᴏᴋ (Oct. 23, 2022),
     https://www.tiktok.com/@chubby_snacks/video/7157777409196969259.
41  Chubby Snacks, Tɪᴋᴛᴏᴋ (Oct. 12, 2022),
     https://www.tiktok.com/@chubby_snacks/video/7153712807656148266.
42  Chubby Snacks, Tɪᴋᴛᴏᴋ (Jun. 9, 2022),
     https://www.tiktok.com/@chubby_snacks/video/7107262969934875950 .
43  Chubby Snacks, Tɪᴋᴛᴏᴋ (Oct. 12, 2021),
     https://www.tiktok.com/@chubby_snacks/video/7018244044023205125.
44  Chubby Snacks, Tɪᴋᴛᴏᴋ (Jan. 1, 2022),
     https://www.tiktok.com/@chubby_snacks/video/7048431508893240622.



67.     On June 15, 2021, Defendant posted on its TikTok page a video with a voiceover stating, "How to make your kids' lunch healthier."  The video shows an Uncrustables sandwich in a lunch box, then the voiceover states to "throw that trash into the … garbage."  The video then shows an Uncrustables sandwich thrown into a garbage container.[45]   The caption includes the hashtag, "#uncrustables."

---

[45] Chubby Snacks, TɪᴋTᴏᴋ (Jun. 15, 2021),
     https://www.tiktok.com/@chubby_snacks/video/6974233440145263877.



68.     Upon information and belief, Defendant operates a second page on TikTok under the username, @trychubbysnacks. The page currently has more than 500 followers and 2,700 "Likes."  On it, Defendant employs the same marketing strategies as its main account, including falsely and misleadingly positioning itself as "the healthy Uncrustable" and casting Uncrustables products in a negative light. For example, on November 3, 2023, the account posted a video stating, "Chubby PB&Js vs. Uncrustable PB&Js……? Is that even a question?? Definitely going with the healthier and more delicious one".[46]

---

[46] Chubby Snacks, Tɪᴋ Tᴏᴋ (Nov. 3, 2023),
https://www.tiktok.com/@trychubbysnacks/video/7297301971407621422.

 

69.     On November 28, 2023, on the @trychubbysnacks page, Defendant posted a video of someone pushing a box of Uncrustables Peanut Butter & Grape Jelly Sandwiches while shopping.[47]



---

[47] Chubby Snacks, TɪᴋTᴏᴋ (Nov. 28, 2023),
https://www.tiktok.com/@trychubbysnacks/video/7306613371061800234.

70.     Upon information and belief, Defendant also maintains Facebook and Instagram pages for advertising purposes. On December 9, 2021, Defendant posted to its Instagram profile and Facebook page an image calling the Chubby Products "a healthier Uncrustable." [48]



71.     Defendant disparages Uncrustables sandwiches not only in permanent posts, but in media designed to be temporary. For example, on March 16, 2024, Defendant posted an image claiming the Chubby Products are an "Upscale and healthier version of Uncrustables" to its then-27.9 thousand Instagram followers via Instagram Stories. These Stories only remain visible for 24 hours. While the post is temporary, the harm done to the Uncrustables brand based on literally and impliedly false and misleading statements cannot be undone.

---

[48] Chubby Snacks, INSTAGRAM (Dec. 9, 2021), https://www.instagram.com/p/CXRwqO4JJCU; Chubby Snacks, FACEBOOK (Dec. 9, 2021), https://www.facebook.com/chubbysnacks/posts/pfbid0AveEYWuDcgiz2pZzm2B8r6iqVBqcUCcRjLUXPMCHjjQTuM9UyyqezZPBGneFFMppl.



72.     In addition to its official social media channels, upon information and belief, Defendant's leadership directs, orders, approves, and authorizes its executives, employees, investors, and other agents to disparage Uncrustables sandwiches on their personal profiles. For example, Patrick Schwarzenegger is a self-described investor and promoter of Defendant's brand. In 2023, he posted on LinkedIn that he chose to invest because the Chubby Products "offer the customer the cleaner, healthier version without sacrificing price flavor & taste. … Uncrustables is a massive business. I stopped eating them when i cared about what i put in my body."[49]

---

[49] Patrick Schwarzenegger, LINKEDIN (Sep. 26, 2022), https://www.linkedin.com/posts/patrickschwarzenegger_threatened-by-smucker-and-facility-closure-activity-6980248732294414336-lMQW/ (last accessed July 2, 2024).



Patrick Schwarzenegger • 2nd
Chief Executive Officer at Mosh
1yr • Edited • 🌐

+ Follow  …

People always ask my what my processes are for investing.

I wish i had a cool answer, but really, I always invest out of the lens of a frustrated consumer.

I bet on the jokey. I bet on the mission.

I'm always Looking at what categories can be disrupted and offer the customer the cleaner, healthier version without sacrificing price flavor & taste.

Chubby Snacks did exactly that. Uncrustables is a massive business. I stopped eating them when i cared about what i put in my body.

Congrats Dillon Ceglio & John O'Brien Brett Perrotta & team. Thanks for having me apart of the mission, & allowing me to continue to help bring awarness to brands like yours.

> Threatened By Smucker And Facility Closure, Chubby
> Snacks Amasses $3.25 Million To Launch Superfood Pean...
> forbes.com • 5 min read

73.     On May 15, 2024, Defendant's founder and CEO Dillon Ceglio appeared on the podcast "Since Sliced Bread," presented by *Baking & Snack* magazine.[50]  In the episode, Ceglio stated that Defendant's products target "consumers that have probably eaten Uncrustables before, that probably want something that has better nutritional value, so they come to us."

74.     Defendant conveys on its website the implication that the "other crustless sandwich" contains "JUNK."  Defendant also claims the Chubby Products contain no "fillers, preservatives, or artificial ingredients," which is misleading because both malic acid and ascorbic acid are synthetic, or artificial, ingredients. 7 C.F.R. § 205.605 (b) (classifying ascorbic acid as

---

[50] "Chubby Snacks dares to compete," SINCE SLICED BREAD (May 15, 2024), https://www.bakingbusiness.com/articles/61492-chubby-snacks-dares-to-compete.

synthetic); 21 C.F.R. § 184.1069(a) (stating that DL-malic acid is synthetically produced). Below

is a comparison posted on Defendant's website.[51]



75.     Defendant's repeated representation that the Chubby Products are "healthier"

than Uncrustables sandwiches is false and misleading for multiple reasons. First, it is not

compliant with FDA regulations governing when a product may be labeled "healthy."  Pursuant

to 21 C.F.R. § 101.65, the term "healthy" and synonyms like "healthier," may only be used as an

implied nutrient content claim on a label if the food is low in fat and low in saturated fat, among

other requirements.

     a.     *Fat content.* Pursuant to 21 C.F.R. § 101.65, which incorporates §101.62(b)(2),

              sandwiches must have 3 g or less of fat per 140 g RACC to qualify as healthy.

              Based on the information in the NFP, the Chubby Products contain 12 g fat per

              75 g serving size, equivalent to 22.4 g fat per 140 g. Thus, the Chubby Products

              are not low fat.

     b.     *Saturated fat content.* Pursuant to 21 C.F.R. § 101.65, which incorporates

---

[51] *Us Vs. Them*, Chubby Snacks, https://www.chubbysnacks.co/pages/us-vs-them (last accessed Aug. 21, 2024).

§ 101.62(c)(2), sandwiches must have 1 g or less of fat per 140 g RACC to qualify as healthy. Based on the information in the NFP, the Chubby Products contain 2.5 g saturated fat per 75 g serving size, equivalent to 4.6 g saturated fat per 140 g. Thus, the Chubby Products are not low saturated fat.

76.     Based on the information in Defendant's own NFP, the Chubby Products do not meet the total and saturated fat criteria to be called "healthy."  By claiming that the Chubby Products are "healthier" than Uncrustables sandwiches in connection with express claims about the Chubby Products' nutrient content, Defendant represents that the Chubby Products have a meaningfully improved nutrient content compared to Uncrustables sandwiches. But, due to the Chubby Products total and saturated fat content, this is not true. Moreover, the Chubby Products also do not qualify as "healthier" under the FDA's proposed rule to update the definition of this term.[52]  Defendant's repeated refrain that the Chubby Products are the "healthier" version of Uncrustables sandwiches is literally and impliedly false and misleading.

77.     Additionally, based on the literally and impliedly false and misleading statements Defendant has made regarding the Chubby Products' sugar content, protein content, fiber content, artificial coloring, and the nature of the Chubby Products' fruit spread (*see* ¶¶ 28–39), any "Healthier" and "Better for You" claims that are based on these attributes, are likewise literally and impliedly false and misleading.

78.     The advertisements stating that Uncrustables sandwiches are "junk-filled" (¶¶ 47, 60, 73), "trash" (¶ 67), made with "cheap" ingredients (¶ 56, 64) and "processed grossness" (¶ 57), convey the unmistakable impression and necessary implication that Uncrustables sandwiches contain fillers, preservatives, artificial ingredients, bleached flour, high-fructose

---

[52] 87 Fed. Reg. 59168 (Sept. 29, 2022). The Chubby Products do not qualify as "healthier" under the proposed rule because, upon information and belief, they do not contain a sufficient amount of a recommended food group.

syrup, and "JUNK." This is false, misleading, and disparaging. For example, Uncrustables sandwiches do not contain high-fructose corn syrup, and the bread is made with unbleached flour. The predominant ingredients in the Chubby Products – wheat flour, water, and whole wheat flour – are the same as those found in Uncrustables sandwiches, and the Chubby Products also share numerous minor ingredients in common, including sugar, dough conditioners, molasses, and fruit juice. Simply put, if these ingredients were "junk," it would be misleading for Defendant to use them in the Chubby Products while claiming to not use such ingredients.

79.     Consumers associate "junk," "trash," "cheap ingredients" and "processed grossness" with adverse health effects. Thus, Defendant's advertisements stating that Smucker fills Uncrustables sandwiches with "junk," "processed grossness," "trash," and "cheap" or "low quality" ingredients convey the unmistakable impression and necessary implication that Uncrustables sandwiches are not safe for human consumption. It is misleading and violates the Lanham Act to falsely suggest that a product is unsafe to eat. *Chobani, LLC v. Dannon* Co.*, 157 F. Supp. 3d 190, 202–03 (N.D.N.Y. 2016) (factfinder would likely conclude the statement "no bad stuff," shown in connection with defendant's product, indicates it contained sucralose and was therefore unsafe to consume).

**Defendant's Constant Misuse and Dilution of the UNCRUSTABLES Mark**

80.     Defendant makes no secret that it benefits from the fame and strength of the Smucker Trademarks and the incalculable goodwill associated therewith. Upon information and belief, Defendant's marketing strategy revolves around a near-constant use and repetition of the Smucker Trademarks, in particular the UNCRUSTABLES Mark, in an unwholesome or unsavory context, in an attempt to divert attention and sales from Smucker to Defendant.

81.     Defendant's attacks against Smucker began in earnest after Smucker legally and

correctly sought to enforce the trademarked circular shape associated and synonymous with the Uncrustables brand. Upon information and belief, when Defendant could no longer make its sandwiches round and the potential of confusion between the two brands decreased, Defendant needed to utilize the Uncrustables brand in another way to drive sales.

82.     Defendant's CEO, Dillon Ceglio, has plainly admitted that drawing a correlation between its products and Smuckers' products drives sales for Defendant. In a September 2022 interview with *Forbes*, Ceglio stated that Chubby Snacks "found that by sitting next to the Uncrustables, our sales velocities are actually greater than when there are no competitors in our set. . . . Although this is a relatively small sample size today, it does provide insights into where our brand can go from here."[53]  Upon information and belief, Defendant encourages consumers to correlate the products through near-constant misuse of Smucker's trademarks.

83.     Defendant makes improper use of the UNCRUSTABLES Mark in each of the statements in ¶¶ 45–73, 92, and 93. Defendant often uses it improperly as a noun, beginning with a lowercase letter, and/or singular instead of plural. Defendant never includes the "®" registered trademark symbol or any attribution to Plaintiff as the trademark owner. This dilutes the distinctiveness of the UNCRUSTABLES Mark.

84.     Each of Defendant's uses of the UNCRUSTABLES Mark portrays the brand in an unwholesome and unsavory context. For example, Defendant calls Uncrustables sandwiches "the scum of the earth" that are eaten by "losers" (¶ 48). These statements are blatantly designed to evoke unflattering thoughts about Uncrustables sandwiches and degrade the consumer's positive association with the brand.

---

[53] Douglas Yu, *Threatened By Smucker and Facility Closure, Chubby Snacks Amasses $3.25 Million To Launch Superfood Peanut Butter And Jelly Sandwich Nationwide*, FORBES (Sep. 26, 2022, 8:00 a.m. ET), https://www.forbes.com/sites/douglasyu/2022/09/26/threatened-by-smucker-and-facility-closure-chubby-snacks-amasses-325-million-to-launch-superfood-peanut-butter-and-jelly-sandwich-nationwide/.

85. Defendant depicts the sandwich and packaging being degraded and/or misused in a number of posts, *see* ¶¶ 65–66, 69. This is further evidence of Defendant's intent to warp the Smucker Trademarks to evoke unflattering thoughts about the Uncrustables brand.

**Defendant's Conduct Amounts to Trademark Dilution by Blurring and Tarnishment; False Advertising; Commercial Disparagement; and Unfair Competition under the Lanham Act and Ohio Statutory and Common Law**

86. Defendant's conduct described above has injured Smucker in its business and property and threatens to continue to injure Smucker unless such conduct is enjoined by this Court.

87. While comparative advertising itself is commonplace, comparisons that are untruthful, disparaging, misleading, or confusing to the public are barred by trademark law. Here, Defendant's comparisons are impermissible because they are literally and impliedly false and misleading.

88. Defendant's dissemination of disparaging false and misleading claims is likely to confuse and mislead consumers when they are making their purchasing decisions, in that:

a. Consumers are likely to be misled by Defendant's false representations that Uncrustables sandwiches are "junk-filled," "the scum of the earth of a food," and "processed grossness," and that the Chubby Products are "better for you;"

b. Consumers are likely to be misled that the Chubby Products contain certain characteristics, such as the amount of sugar, high protein, and high fiber levels, which are literally and impliedly false and misleading; and,

c. Consumers are likely to be misled that Uncrustables sandwiches are unsafe for human consumption.

89. Smucker's Consumer Relations Department and Ethics & Compliance Integrity Portal has received multiple calls concerning claims made in Chubby Snacks' advertising.

50

90.     On information and belief, Defendant's false and misleading claims are in willful and wanton disregard of the interests of the consuming public and constitute a knowing attempt by Defendant to deceive consumers and misappropriate current customers of Uncrustables sandwiches.

91.     Defendant's constant use of the UNCRUSTABLES Mark in an unwholesome and unsavory context for the purpose of promoting a competing Product, has diluted the selling power of the mark and diminished the trademark's reputation. The injuries and damages sustained by Smucker have been directly and proximately caused by Defendant's false and misleading statements about Uncrustables sandwiches and the Chubby Products. The damage that has already occurred via social media posts, and which remains prominent and visible on Defendant's platforms, cannot be undone or repaired.

92.     Smucker has been damaged as a direct result of Defendant's false and misleading claims. If not enjoined, Defendant's wrongful conduct will continue to cause substantial damage to Smucker. Smucker has also been forced to expend monies to counteract the negative effects of Defendant's false and misleading claims.

## Defendant Defames Smucker

93.     Defendant defames Smucker by intentionally misrepresenting Smucker's efforts to enforce the Smucker Trademarks.

94.     Defendant acknowledges that Smucker legally and correctly sought to enforce certain Smucker Trademarks, including the registered round sandwich design that is associated and synonymous with the Uncrustables brand. In a video posted to Defendant's TikTok page on April 14, 2023, Defendant's Chief Executive Officer states that he has "news coming from the crustless sandwich war." He states, "I don't think we actually publicly addressed this but back in

'21 when we relaunched our cloud shaped sandwich we actually took a page out of the Uncrustables . . . or Smucker's . . . playbook and filed for a patent design on a cloud shape sandwich."  He continues, "I also just want to say too that I'm not trying to throw shade here; if it wasn't for the Uncrustables and Smucker we wouldn't exist which I'm super grateful for in a sense."[54]

95.    Despite this acknowledgement, Defendant continues to publicly state that Smucker did not have a valid basis for enforcing its trademark rights, but rather set out to stifle competition. For example, in a TikTok video posted on June 28, 2024 (*see supra* ¶ 47), Defendant's Chief Executive Officer defames Smucker by mischaracterizing Smucker's valid effort to protect the Smucker Trademarks as one to stifle competition.[55]  With Smucker's letter requesting Chubby Snacks cease the unauthorized use of Smucker Trademarks in the background, he claims Smucker feared competition from Chubby Products stating, "but we're different and they're actually afraid of that . . . here's the cease and desist to prove it."  He further states, "We're the David to their Goliath, so I'm sure I'm gonna be hearing from their lawyers because of this video." The caption includes the hashtag, "#davidvsgoliath".

---

[54] Chubby Snacks, Tɪᴋ Tᴏᴋ (April 14, 2023),
https://www.tiktok.com/@chubby_snacks/video/7222059041143491886?lang=en.
[55] Chubby Snacks, TIKTOK (June 28, 2024),
https://www.tiktok.com/@chubby_snacks/video/7385671053705628958?lang=en.







96.     On December 22, 2022, Defendant posted on its TikTok page a video of one of its founders, John O'Brien, describing Smucker's enforcement of its trademarks.[56]   He states, "Smuckers [sic] is actively looking to take down small businesses. In case you guys missed it, they sent this Minneapolis-based company, Gallant Tiger, a cease and desist this week. …  In December 2020, they sent us a cease and desist for having a circular shaped sandwich. Weirdly enough, this massive company has a patent design on a circular shaped sandwich. So now you at least know why we changed to a cloud. Gallant Tiger's not the first company to receive this letter; they're not gonna be the least. Let's get some justice for small business."  In the video, Defendant shows Smucker's patent design of a sealed crustless sandwich that Smucker. And in the caption, Defendant writes, "say it with me now… Smuckers is a bully".





97.     In a September 2022 interview with *Forbes* (*see supra* ¶ 82), Defendant characterized Smucker's enforcement of its trademarks as "threatening."

98.     On June 9, 2022, Defendant posted on its TikTok page a video of its CEO, Dillon Ceglio, describing Smucker's enforcement of its trademarks.[57]  He states, "Now that I've grown up, I realized that PB & J should really never be a guilty pleasure. I'd even be willing to bet that everyone watching this video has eaten an Uncrustable before. . . . We launched the business about two years ago, originally in a circle shape. Unfortunately, Smuckers [sic] didn't really like that. After we won the battle, we launched our cloud shape sandwich a little over a year ago."  In part of the video, in apparent reference to Smucker's enforcement of its trademarks, Ceglio points to an image including an Uncrustable sandwich and writes, "Is this slander?"

---

[57]  Chubby Snacks, TIKTOK (Jun. 9, 2022),
https://www.tiktok.com/@chubby_snacks/video/7107262969934875950 .



## COUNT I
## FALSE ADVERTISING
## <u>15 U.S.C. § 1125(a)</u>

99.     Smucker incorporates each and every allegation of the foregoing paragraphs of this Complaint as though fully set forth herein.

100.    This cause of action for false advertising and commercial disparagement arises under the Federal Trademark Act (15 U.S.C. §§ 1051–1127), specifically 15 U.S.C. § 1125(a)(l)(B).

101.    Defendant sells the Chubby Products in interstate commerce and is engaged in advertising campaigns in connection with the marketing of the Chubby Products.

102.    In Defendant's advertising and promotions, as well as claims made on its website and social media platforms, Defendant has knowingly, intentionally, deliberately, and in bad faith materially misrepresented in interstate commerce the nature, characteristics, and qualities of Smucker's Uncrustables sandwiches, in violation of 15 U.S.C. § 1125(a)(1)(B).

103.    Defendant is a direct competitor of Smucker.

56

104.    Defendant asserts the Uncrustables sandwiches are "junk-filled," "the scum of the earth of a food," "processed grossness," and that the Chubby Products are "better for you" than Smucker's Uncrustables sandwiches, based on nutritional claims that are literally and impliedly false and misleading.

105.    Upon information and belief, Defendant has made claims about the Chubby Products' sugar, protein, saturated fats, and sodium content that are false and misleading.

106.    Defendant's representations that the Chubby Products are "healthier" than Uncrustables sandwiches are false and misleading, because the Chubby Products do not meet the regulatory criteria for such claims, and because the Chubby Products' total and saturated fat content mean that they are not, in fact, healthier than Uncrustables sandwiches.

107.    Defendant has made claims about its protein content on its label that do not comply with federal regulations, and has overstated the Chubby Products' protein content by not disclosing the corrected protein content in the NFP reflecting the usable amount of protein, and thus makes false and misleading claims on the front of its label.

108.    Defendant falsely calls its fruit spread a "jam," despite not complying with federal regulations governing the standard of identity for jam that set consumer expectations for this ingredient, and thus makes false and misleading claims regarding the Chubby Products' content.

109.    Defendant has described the Chubby Products as "high fiber" without the required adjoining disclaimers regarding the RACC and the amount of fat per serving, and thus makes false and misleading claims in its advertising.

110.    Defendant has failed to identify the artificial coloring used in its "Strawberry Jam" Product, and thus makes false claims about the nature of an ingredient.

111.    The false and misleading statements about Uncrustables sandwiches and about the

Chubby Products, made by Defendant on its website, social media, and email advertising, are material because such representations are likely to influence consumers' purchasing decisions.

112.    Defendant's false and misleading statements will actually or tend to deceive a substantial portion of the intended audience.

113.    Defendant's false and misleading statements were introduced into interstate commerce via Defendant's packaging, website, and social media platforms, which are accessible nationwide.

114.    As an actual and proximate result of Defendant's willful, wanton, and intentional actions, Smucker has suffered damages in an amount to be determined at trial. Unless Defendant is enjoined, Smucker will continue to suffer irreparable injury to its business, reputation, and goodwill by reason of the false and misleading statements by Defendant about Uncrustables sandwiches, and the diminution of goodwill caused by the misrepresentations and advertising.

115.    Smucker is entitled to all remedies available under 15 U.S.C. §§ 1116 and 1117.

116.    Pursuant to 15 U.S.C. § 1117(a), Smucker seeks to recover actual, compensatory, and consequential damages in an amount to be determined at trial, including, but not limited to, reimbursement for the corrective efforts that Smucker has undertaken and will undertake to address Defendant's wrongful conduct. Because this is an exceptional case, Smucker is entitled to an award of attorneys' fees.

117.    In addition, pursuant to 15 U.S.C. § 1117(a), Smucker is entitled to the disgorgement of Defendant's profits.

118.    Smucker also requests permanent injunctive relief as authorized by 15 U.S.C. § 1116(a). Defendant disseminated the materially false advertising into interstate commerce with the intent to mislead, confuse, and deceive potential customers of Uncrustables sandwiches. Unless

Defendant is enjoined from continuing its wrongful actions, Smucker will continue to suffer irreparable injury, harm, and damages.

119.    Defendant should be enjoined from disseminating or causing to be disseminated or published any advertisement, commercial, promotional material, labeling, packaging, package insert, press release, or other material containing claims, representations, statements, or demonstrations that state or imply, directly or indirectly, any of the advertising claims that Smucker has alleged to be false.

120.    Defendant should be ordered to publish corrective advertising to dispel the false and deceptive impressions created by the aforementioned false advertising.

121.    Because Defendant made and continues to make false and/or misleading representations of fact about Smucker with intentional disregard of their falsity and/or misleading nature, Smucker is entitled to an award of treble damages under Section 35(a) of the Lanham Act (15 U.S.C. §1117(a)).

**COUNT II**
**TRADEMARK DILUTION**
**<u>15 U.S.C. § 1125(c)</u>**

122.    Smucker incorporates each and every allegation of the foregoing paragraphs of this Complaint as though fully set forth herein.

123.    Smucker has used the Smucker Trademarks, including the UNCRUSTABLES Mark, before Defendant began using the Smucker Trademarks to advertise the Chubby Products and in conjunction with Defendant's business and marketing. The Smucker Trademarks are inherently distinctive or have acquired distinctiveness through Smucker's extensive, continuous, and exclusive use of them.

124.    The UNCRUSTABLES Mark has become famous and distinctive within the

meaning of 15 U.S.C. § 1125(c)(1) and § 1127. The UNCRUSTABLES Mark is widely recognized, including within this judicial district, as being affixed to goods of the highest quality and originating with Smucker. The UNCRUSTABLES Mark was famous and distinctive before Defendant's first use of such trademark or modification of it.

125.    Defendant uses and modifies the UNCRUSTABLES Mark, without authorization, throughout its social media and other online advertising, including but not limited to hashtags, text posts, audio and visual media.

126.    Defendant's unauthorized use of the UNCRUSTABLES Mark and modification of it are likely to dilute the distinctive quality of the UNCRUSTABLES Mark in violation of 15 U.S.C. § 1125(c).

127.    Defendant is causing dilution by blurring because, when a prospective customer sees advertising for the Chubby Products that incorrectly reproduces the UNCRUSTABLES Mark, it lessens the capacity of the famous UNCRUSTABLES Mark to identify and distinguish the source of Plaintiff's products from those of others.

128.    Defendant is causing dilution by tarnishment because Defendant's unauthorized use of the famous UNCRUSTABLES Mark in connection with Defendant's untruthful claims and misleading labels and advertisements , as well as its portrayal of the Uncrustables brand in an unwholesome manner, impairs the reputation, goodwill and positive associations of the UNCRUSTABLES Mark.

129.    By including the famous UNCRUSTABLES Mark in many of its advertisements, Defendant has created an association to Smucker that dilutes the UNCRUSTABLES Mark.

130.    Smucker is entitled to all remedies available under 15 U.S.C. §§ 1116, 1117 and

1118.

131.    Defendant's acts complained of herein are likely to damage Smucker irreparably. Smucker has no adequate remedy at law for such wrongs and injuries. The damage to Smucker includes potential harm to its trademarks, goodwill, business, and reputation that money cannot compensate. Smucker is, therefore, entitled to an injunction enjoining Defendant's use of the Smucker Trademarks, including the UNCRUSTABLES Mark, and any marks dilutive thereof.

132.    Smucker is further entitled to recover from Defendant the actual damages sustained by Smucker because of Defendant's wrongful acts. Smucker is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendant's acts of dilution.

133.    Smucker is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained because of its wrongful acts. Smucker is presently unable to ascertain the extent of the gains, profits, and advantages Defendant has realized by reason of Defendants' willful acts of dilution.

134.    Because Defendant made and continues to make false and/or misleading representations of fact about Smucker with intentional disregard of their falsity and/or misleading nature, Smucker is entitled to an award of treble damages under Section 35(a) of the Lanham Act (15 U.S.C. §1117(a)).

135.    Moreover, given the years of prior notice, near-constant ad hominem attacks on the Uncrustables brand, and degrading depictions of Uncrustables sandwiches, this is an exceptional case for which the Court should award Smucker its reasonable attorneys' fees.

**COUNT III**
**TRADEMARK DILUTION UNDER**
**OHIO COMMON LAW**

136.    Smucker incorporates each and every allegation of the foregoing paragraphs of this Complaint as though fully set forth herein.

137.    Through prominent, long, and continuous use in commerce, including commerce within the State of Ohio, the UNCRUSTABLES Mark has become and continues to be famous and distinctive throughout the State of Ohio.

138.    Defendant's use of the UNCRUSTABLES Mark began after the UNCRUSTABLES Mark became famous and distinctive.

139.    Defendant's use of the UNCRUSTABLES Mark is intended to derive a commercial benefit from Smucker's already famous and distinctive word mark.

140.    Defendant's use of the UNCRUSTABLES Mark is likely to injure Smucker's business reputation and dilute the distinctiveness and effectiveness of the UNCRUSTABLES Mark, by tarnishing and degrading the positive associations of the UNCRUSTABLES Mark; eroding the public's exclusive identification of these famous marks with Smucker; and otherwise diluting the selling power of the UNCRUSTABLES Mark.

141.    Defendant's actions demonstrate a willful and malicious intent to trade on the goodwill associated with the UNCRUSTABLES Mark and to cause dilution of the UNCRUSTABLES Mark, to the great and irreparable injury of Smucker.

142.    Defendant is causing and will continue to cause irreparable injury to Smucker's goodwill and business reputation and dilution of the distinctiveness and value of Smucker's famous and distinctive UNCRUSTABLES Mark, in violation of the Ohio common law.

143.    Unless enjoined by this Court, the acts of Defendant complained of herein will cause Smucker to suffer irreparable harm for which there is no adequate remedy at law.

**COUNT IV**
**DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER**
**OHIO REV. CODE § 4165.02**

144.    Smucker incorporates each and every allegation of the foregoing paragraphs of this Complaint as though fully set forth herein.

145.    Through the conduct described herein, Defendant has engaged in unfair competition and deceptive trade practices in violation of Ohio Revised Code § 4165.02.

146.    Defendant made false, misleading, and disparaging statements of fact about the characteristics and qualities of Uncrustables sandwiches and its own Chubby Products.

147.    The false and misleading statements made by Defendant will actually or tend to deceive a substantial portion of the intended audience.

148.    The false and misleading statements made by Defendant are material because such representations are likely to influence consumers' purchasing decisions.

149.    The false and misleading statements made by Defendant were introduced into interstate commerce via Defendant's externally facing webpage, social media platforms, and email advertisements, which are accessible nationwide.

150.    Defendant's unauthorized use of the UNCRUSTABLES Mark on its social media posts has created an association to Smucker that dilutes the UNCRUSTABLES Mark.

151.    Upon information and belief, the conduct of Defendant has been deliberate and willful and has been committed with the intent to deceive the public and misrepresent the quality of Plaintiff's goods.

152.    As an actual and proximate result of Defendant's willful, wanton, and intentional actions, Smucker has suffered damages in an amount to be determined at trial.

153.    Unless Defendant is enjoined by this Court, Smucker will continue to suffer, monetary loss and irreparable injury and other damage to its business, reputation, and goodwill in regard to Uncrustables sandwiches for which Smucker has no adequate remedy at law.

154.    Smucker is entitled to all remedies available, including, but not limited to, damages, injunction, equitable relief, and reasonable attorneys' fees. Ohio Revised Code § 4165.03.

## COUNT V
## VIOLATION OF THE OHIO FOOD DISPARAGEMENT STATUTE
## OHIO REV. CODE § 2307.81

155.    Smucker incorporates each and every allegation of the foregoing paragraphs of this Complaint as though fully set forth herein.

156.    Smucker's Uncrustables sandwiches are perishable agricultural food products as defined by Ohio law, O.R.C. § 2307.81(B)(1). Smucker's Uncrustables sandwiches are distributed in Ohio, and each product's packaging includes an expiration date.

157.    Smucker is a producer of these perishable agricultural food products for purposes of Ohio law, O.R.C. § 2307.81(B)(1).

158.    Defendant has disseminated to the public through its online advertising the aforementioned false and disparaging statements regarding Smucker's perishable agricultural food products and conveys that such products are not safe for human consumption.

159.    The false and disparaging claims communicated by Defendant are not based upon reasonable and reliable scientific inquiry, facts, or data that directly indicates that Smucker's perishable agricultural food products are not safe for human consumption.

160.    Smucker's perishable agricultural food products are produced, distributed, and sold within Ohio in a form that will perish or decay beyond marketability within a reasonable period of time.

161.    Smucker has suffered and will continue to suffer damage because of Defendant's disparaging statements.

162.    Defendant willfully, intentionally, and maliciously disparaged Smucker's products for the purpose of promoting its own Chubby Products, thereby harming Smucker and its reputation and goodwill. This conduct was engaged in, ratified, and perpetrated by its co-founders,

Dillon Ceglio, Brett Perrotta, and John O'Brien.

163. Defendant's disparaging statements have caused, and will continue to cause, great, immediate, and irreparable harm to Smucker's business reputation and injury to its goodwill.

164. Because Defendant and its co-founders disseminated advertising they knew or should have known was false, damages should be awarded, including compensatory damages, treble damages, and punitive damages, reasonable attorney's fees, and costs of the action. O.R.C. § 2307.81(A-E).

165. Smucker has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order:

A.     Declaring that Defendant has violated 15 U.S.C. § 1125(a) and (c);

B.     Declaring that Defendant has violated the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02; Ohio Rev. Code § 2307.81(B)(1);

C.     Enjoining Defendant from disseminating or causing to be disseminated or published any advertisement, commercial, promotional material, labeling, packaging, package insert, press release, or other material containing claims, representations, statements, or demonstrations that state or imply, directly or indirectly, any of the claims in Paragraphs 28 through 74, and 94 through 98 of this Complaint;

D.     Awarding Smucker all relief available to it under 15 U.S.C. §§ 1116, 1117 and 1118, including actual, compensatory, and consequential damages; disgorgement of ill-gotten profits, corrective advertising, and other injunctive relief as appropriate, in an amount to be determined at trial;

E.     Awarding Smucker all relief available to it under O.R.C. § 2307.81(A-E) and Ohio Revised Code § 4165.03;

F.      Awarding Smucker any and all compensatory damages, restitution, disgorgement of profits, treble damages, punitive damages, attorneys' fees, costs, disbursements, and expert fees resulting from Defendant's intentional, willful, and wanton unlawful acts as described herein, in an amount to be determined at trial; and

G.      Granting Smucker any other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues triable thereby.


Dated this 16th day of September, 2024.      Respectfully submitted,


WINSTON & STRAWN LLP

/s/ *Ronald Y. Rothstein*
Ronald Y. Rothstein (*pro hac vice* pending)
RRothste@winston.com
Sean Suber (*pro hac vice* pending)
SSuber@winston.com
35 West Wacker Drive
Chicago, Illinois 60601
Tel. (312) 558-5600

Shui Sum Lau (*pro hac vice* pending)
SSLau@winston.com
333 S. Grand Ave. Ste. 3800
Los Angeles, CA 90071
Tel. (213) 615-1918

Attorneys for Plaintiff
THE J.M. SMUCKER COMPANY